## E. W. BURGES, ADMR., *v*. NICHOLAS G. BOSLEY.

**Trusts—Purchasing Debtor's Property for Benefit of Debtor.**

Where one purchases a debtor's property for the benefit of the debtor, and takes title to secure the money advanced, the purchase should enure to the benefit of the debtor, and the purchaser should be compelled to execute the trust.

**Trusts—Purchasing Debtor's Property—Refunding Purchase Price.**

Where one who buys the land of a debtor, which was sold for the debt, and holds it only as security for the liability incurred by the purchaser, and the debtor stands by and sees his land sold and is permitted by the purchaser to retain the possession as if no sale had been made and refunds the purchase price paid for the land, and the purchaser receives it as such, and the debtor makes valuable and lasting improvements upon the land selling other portions of his real estate to refund the advance made for him, a court of equity will upon application enforce the trust against the purchaser, by compelling a re-conveyance of the property and quiet the title of the debtor.

APPEAL FROM DAVIESS CIRCUIT COURT.

December 8, 1872.

OPINION BY JUDGE PRYOR:

There is no doubt but what a court of equity would have enforced the award made by the arbitrators by which the accounts between the appellee and Burges were adjusted.

Burges, however, in his reply to the counter claim of Bosley, ignores the award and by this pleading invites the appellee to another settlement of the multiplied accounts between them, and asks that the case be referred to the commissioner for that purpose.

It is now too late to insist upon enforcing that agreement when all parties seem to have accepted the proposition of Burges to open the controversy and have really prepared the case without regard to this amicable settlement.

The appellant (Burges having died since the institution of the suit) alleges an express agreement made with the appellee at the time of his purchase of his residence and mill property, under execution, "that Bosley was to purchase the property to aid the plaintiff, and that the plaintiff should redeem the property by paying back to him, Bosley, the amount for which he, Bosley, was bound for as purchaser," and in the aswer to the action at law for the recovery of a portion of this real estate in controversy instituted by the appellee, Burges alleges, "that the plaintiff, by an agreement with the defendant, purchased the same with the express understanding between the parties that he was doing so as the friend of the defendant, and that defendant was to retain the possession of the same and redeem it by paying back to the plaintiff the amount bid by him." It is further alleged in the petition of Burges, and also in his answer to the suit at law of the appellee, "that the former retained the possession of the property and did in fact pay back to the appellee all the moneys paid by the latter on the various executions and judgments, and that he, Burges, afterwards sold to the appellee one-half of the mill property for $7,500.

The testimony of many intelligent witnesses was taken with reference to the alleged parol agreement under which Burges or his representative claims the right to redeem this land, and their statements leave no room to doubt that such a contract was made.

It is clearly shown that the purchase of the property was made for Burges, by Bosley, and also to secure the latter as his surety upon the very debts for which the property was sold.

That Bosley, after the purchase and payment by him of the debts of the execution creditors received back from Burges, under the parol contract by which the property was to be held by him until he was repaid the money advanced, nearly the entire amount; that Burges at no time surrendered the possession of any of the land from the date of the purchase in 1862 up to the institution of this suit, but on the contrary after the greater portion of the money had been repaid by Bosley, the latter purchased from Burges one-half of the mill property that he had previously purchased under the judgment in the chancery court; that no deeds were ever demanded or required to be made him, under the execution sales, until the difficulties originated with reference to a settlement of their accounts.

The only defense relied on to defeat appellant's right to enforce this parol agreement, is the statute of frauds, and relief was denied by the learned judge in the court below, upon the sole ground, that appellant's petition contained no such allegation of fraud, or of sacrifice in the sale of his property by reason of this parol agreement, as authorized a court of equity to interpose.

If there had been a sale of land by one of these parties to the other in parol, the refusal of the court to grant the relief would have been proper, but there is nothing in the record evidencing any sale of land by Boswell to Burges, but on the contrary the whole proof conduces to show that the land was bought for Burges, and the title acquired by Bosley, whether legal or equitable, held only to indemnify him as the surety for the moneys advanced by him.

Previous to the adoption of the Revised Statutes, where a conveyance was made to one person and the purchase money paid by another, it was well settled that a trust resulted in favor of the party paying the money.

In the case of *Boyd v. McClain* (referred to by this court in the case of *Honore v. Hutchings,* 8 Bush 693), and reported in 1 Johns. Chancery Reports, Chancellor Kent went so far as to decide that where the party to whom the conveyance was made paid the whole of the purchase money, it was competent to show that he took the title to secure the repayment of the same, it having been loaned to the real purchaser.

In the case of *Green v. Ball,* 4 Bush 586, an agreement by the

purchaser that he would buy the land to prevent a sacrifice, was enforced and adjudged not to be within the statute of frauds.

We perceive no reason why, a purchase for the benefit of a debtor, whose propery is sold under an agreement with the purchaser that he will hold it only as security for the money advanced by him on the purchase should not inure to the benefit of the debtor and the purchaser compelled to execute the trust.

It is true that such agreements are generally made when property is about to be sold at a sacrifice, and the opinions rendered in such cases are predicated upon the idea of fraud, but the true, and in our opinion the sound rule, on the subject is that the purchase is made for the debtor, and constitutes no such contract as is within the statute of frauds. *Williams, Jr., v. Williams,* 8 Bush 254.

Conceding, however, that fraud either actual or constructive, must exist the confiding debtor as in this case relying on the possession of his friend, and his agreement that he will buy his land and hold it only as the security of the liability he incurs by his purchase, stands by and sees his land sold and is permitted by the purchaser to retain the possession as if no sale had been made and actually refunding the purchase price paid for the land, the purchaser receiving it as such, making valuable and lasting improvements upon it, selling other portions of his real estate to refund the advance made for him, may well ask a court of equity on account of this unfair dealing, when the purchaser refuses to comply with his contract and seeks to recover the possession, to make the trust effective by compelling a reconveyance of the property, and quieting the original debtor in his possession.

The very object of the purchase by Bosley was to prevent a sacrifice of the land under the execution sale. The effect of the sale was to lessen the value of the property and, although the land might have sold for two-thirds of its value, the object of the agreement by both parties was to avoid the effect that a compulsory sale of Burges' property could have upon his pecuniary condition at that time, and to enable him to redeem it.

The facts alleged in the pleadings show the trust and the breach of faith on the part of the appellee in refusing to execute it, and although the proof is more convincing of appellant's equity than the allegations in his pleadings, regarding them as true, still the

allegations are broad enough to authorize the chancellor to grant the relief asked.

The chancellor should have directed a reconveyance of all the land except the one-half of the property known as the mill property. The appellee was already vested with the title for the purpose of the trust (whether a deed had been made him does not appear) and Burges had the power to surrender his right under the parol agreement to redeem any portion of it with the consent of the appellee. It is clearly shown that Bosley was to retain one-half interest in the mill and the property pertaining to it. Bosley is not seeking to have this trade canceled, but insists, however that he made no purchase of the one-half of the mill property, and that if he did, it was in parol. The proof is clear that he made the purchase. The title is made perfect in him by reason of his purchase under the judgment sale, and the agreement of the appellant to surrender the right to redeem to that extent, and he can not now complain for the want of title.

In regard to the settlement of the accounts between these parties the chancellor should adopt as the basis the accounts of each as presented to the arbitrators. The parties to the controversy knew more in reference to these matters than the witnesses. All the items of each account were admitted except items amounting in the aggregate to about $100, and the value of the mill property.

The small items are not remembered by the arbitrators about which the parties disputed. If the parties desire to correct the accounts with reference to these items, or rely upon any mistake or omission in making out their accounts, they should be required to file an amended pleading specifying the mistake or omissions if any. As to the value of one-half of the mill property, it seems that $7,500 is too high, and as the proof now shows, it is difficult to fix a value. The commissioner should hear proof as to the value of the one-half the mill property at the time of the sale of it to appellee, and also the proof in regard to any other accounts arising between the parties on account of the partnership since the arbitration, and will also ascertain the liability of the partnership which it seems the parties had not ascertained when the case was arbitrated, and the amount due by each, and also may take proof in reference to any other matters arising upon the pleadings hereafter filed.

The heirs of Burges should be brought before the court in order that the title may be vested in them to the property to which they are entitled.

The judgment of the court below is reversed and cause remanded for further proceedings in conformity with this opinion.

*Weir & Williams, for appellant.*

*Sweeney & Sweeney, for appellee.*