CASE 78—PETITIONS EQUITY—MAY 17.

# Sherley v. Sherley, &c.
# Ewing, &c v. Sherley, &c.

### APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. PAROL TRUST.—When a father buys and pays for land taking a conveyance to himself, declaring by parol that he holds the land in trust for his son, whom he allows to occupy it as a home, but dies leaving a will devising the land to others, the parol declarations of the father do not create an enforceable trust in favor of the son or his heirs.

2. AN INTEREST IN PERSONALTY MAY BE GIVEN BY PAROL, or one may undertake by parol to stand seized to the use and benefit of another as to personal estate. And the rule that actual possession must accompany the gift is not of universal application.

    In this case an interest in a mercantile firm is held to have passed by parol gift.

3. COMMISSIONS OF ADMINISTRATOR AND GUARDIAN—SET-OFF.—Where no commissions had ever been allowed to one who acted as administrator of his son and guardian of his grandchildren, and the wards after many years sought to surcharge his settlements as administrator and guardian, it was proper to allow him, or his personal representative, to set-off his commissions against any items established against him as administrator or guardian.

SIMRALL, BODLEY & DOOLAN FOR APPELLANTS.

1. Lewis Sherley at his death had never completed a gift to Bowen of any interest in the firm of Sherley, Woolfolk & Co. It is essential to the validity of a gift *inter vivos* that there should be a delivery to the donee, and that the property or thing given should immediately pass and be irrevocable by the donor.

(Duncan v. Duncan, 5 Litt., 12; Walden v. Dixon, 5 Mon. 170; Knott v. Hogan, 4 Met., 102; Payne v. Powell, 5 Bush, 252.)

2. It is the duty of a court of equity to compel Z. M. Sherley's estate to account to Lewis Sherley's estate for his entire interest in the assets of the firm of Sherley, Woolfolk & Co. The law treats the surviving partner as a trustee for the benefit of the deceased partner's estate as well as creditors, and if he is guilty of either negligence or delay a court of equity will interfere; and in such case it is the duty of the personal representative of the deceased partner to apply to the court to compel the survivor to properly administer the trust and close up the estate; and if he fails to do this he is equally culpable with the survivor. (Parsons on Partnership, pp. 442, 445.)

3. A parol trust in land may be enforced. (Williams v. Williams, 8 Bush, 241; Griffin and wife v. Coffey, 9 B., Mon., 452; Martin v. Martin, 16 B. Mon., 8; Miller's heirs v. Antle, 2 Bush, 408; Green v. Ball, 4 Bush, 586; Crutcher v. Muir's exor., 90, Ky., 142; Graham v. King, 96 Ky., 339; 1 Perry on Trusts, sec. 75.)

4. When a final settlement is made by an administrator or guardian without any claim for commission the court will not permit the matter to be opened up again for that purpose. (Matter of estate of Edward O'Neil, 46 Hun., 500; May v. Corliss, 68, Ala., 135; Swanson v. Phillips, 21 N. J. L., 70; Ten Broeck v. Fidelity Trust & Safety Vault Co., 88 Ky., 242; James v. O'Driscoll, 2 Ray, S. C., 101.)

5. The claim to commissions is barred by limitation, over fifteen years having run since the settlements were made and only five being necessary to bar.

P. B. & UPTON W. MUIR ON SAME SIDE.

1. None of the claims sued for were barred by the statute of limitation or by laches. (Ky. Statutes, sec. 2521.)

2. As the seventh section of the Statute of Frauds has never been enacted in Kentucky, a parol agreement to hold land in trust is enforceable. (Miller v. Thatcher, 9 Texas, 482; 16 Texas, 262; 19 Texas. 102; 6 Wall., 116; 5 Jones' Equity, 292; 6 Humph., 99; 8 Humph., 460; 4 Sneed, 705; 7 Leigh, 576; 2 P. & H., 549; Crutcher v. Muir's exor., 90 Ky., 144; Graham v. King, 96 Ky. 339; Curd v. Williams, 13 Ky. Law Rep., 855; Monarch v. Jones, 8 Ky. Law Rep., 612; Bedford v. Graves, 8 Ky. Law Rep., 262; Williams v. Williams, 8 Bush, 241; Griffin v. Coffey, 9 B. Mon., 452; Martin v. Martin, 16 B. Mon., 8; Green v. Ball, 4 Bush, 590; 13 Ky. Law Rep., 865; 6 Ky. Law Rep., 309; 7 Ky. Law Rep., 294; 4 Ky. Law Rep., 364; 2 Bush, 408; 16 B. Mon., 14; 9 B. Mon., 452; 13 Ky. Law Rep., 824; 10 Ky. Law Rep., 92.)

Sherley v. Sherley, &c.

3. Even if a writing was necessary, the memorandum made by the agent of Capt. Sherley at his request, and afterwards ratified by him, is sufficient to take the case out of the statute. (Elliott v. Elliott, 15 Ky. Law Rep., 274.)

4. The checks which read "Pay to L. A. Sherley, repairs," are sufficient to satisfy the requirements of the Statute of Frauds. (Miller v. Antle, 2 Bush, 407; Wood on Statute of Frauds, p. 649.)

5. There was not a valid gift to Bowen of Lewis Sherley's interest in the firm of Sherley, Woolfolk & Co. (Payne v. Powell, 5 Bush, 252; Duncan's admr. v. Duncan, 5 Litt., 12, 13; 8 Am. and Eng. Enc. of Law, 1313, 1315.)

6. Z. M. Sherley having made his final settlement without charging commissions can not now do so. (Reynolds v. Reynolds, 13 Ky. Law Rep.; Ten Broeck v. Fidelity Trust & Safety Vault Co., 88 Ky., 242.)

C. B. SEYMOUR ON SAME SIDE.

1. The Statute of Frauds is not in force here by reason of its enactment in England. (Searcy v. Major, 4 Bibbs, 96.)
        Therefore, as sec. 7 of the statute has never been re-enacted here, it is not in force here.

2. A trust for value may be treated as a sale. (Chiles v. Woodson, 2 Bibb, 71; Parker v. Bodley, 4 Bibb, 102.)

3. A trust may be created of lands in this State without a writing. (Green v. Ball, 4 Bush, 591; Myles v. Myles, 6 Bush, 245; Faris v. Dunn, 7 Bush, 276; Caldwell v. Caldwell, 7 Bush, 515; Hobbs v. Wilcox, MS. Op., 1881.)

4. While as a rule an equity resting on a merely meritorious consideration will not be enforced against an heir, who is unprovided for, yet in the case at bar appellees are well provided for and therefore the relief should be granted. (Garner v. Garner, 1 Bush, Eq., 1; McIntire v. Hughes, 4 Bibb, 187; Buford v. McKee, 1 Dana, 108; Mahon v. Mahon, 7 B. M., 579.)
        Cases explained: Rucker v. Abell, 8 B. M., 566; Spears v. Sewell, 4 Bush, 239; Usher v. Flood, 83 Ky., 552.

HUMPHREY & DAVIE, JOHN W. BARR, JR., FOR APPELLEES.

1. The proof shows that Captain Z. M. Sherley paid for the country place, and does not show that he gave it to his son Lewis. A verbal promise by the father to give the farm to his son, without valuable consideration, even if proved, would have been within

the statute of frauds, and not enforceable. The doctrine of "part performance" taking a case out of the statute of frauds, does not prevail in Kentucky. (General Statutes, chap. 22, sec. 1; chap. 24, sec. 2; Perry on Trusts, sec. 134, 137; Am. & Eng. Ency. Law, vol. 10, p. 12; Grant v. Craigmiller, 1 Bibb, 205; Rucker v. Able, 8 Ben. Mon., 566; Spears v. Sewell, 4 Bush, 239; Usher v. Flood, 83 Ky., 560; Commonwealth v. C. & O. R. Co., 14 Ky. Law Rep., 682.)

2. The proof shows that Lewis Sherley gave to Bowen one-fourth of his interest in the firm of Sherley, Woolfolk & Co.; and a correct calculation of the various items shows that whatever sums Captain Sherley had, as administrator of Lewis, received from the firm, were fully accounted for, in his settlements. The parol gift by Lewis to Bowen, or an interest in the firm, is sufficiently shown by the evidence. (Williamson v. Yeager, 91 Ky., 284.)

3. Captain Sherley, as administrator of Lewis, had no right or power to collect the debts or other assets of the firm; this being the exclusive right and duty of the surviving partner, Woolfolk; and the administrator is not liable for any negligence of the surviving partner in failing to collect them. (Lindley on Partnership, side page 440; Wilson v. Soper, 13 B. M., 411; Shields v. Fuller, 65 Am. Dec., 293, 298.)

4. If there had been any duty on the administrator to collect the assets of the firm, there was no duty to bring suit against debtors where there was no likelihood of making the debt; and the administrator would only be liable where his failure to bring suit was from bad faith or from wilful default or fraud. (Thompson v. Brown, 4 Johnson's Ch., 619; Thomas v. White, 3 Litt., 184; Read v. Perry, 1 Monroe, 256.)

5. The other items sued for are unsupported or disproved by the evidence; and, if they were allowed, they would not equal the amount of commissions which Captain Sherley was entitled to, as administrator. As he expressly reserved in his settlements the right to charge commissions if he saw fit, such commissions can now be used as a set-off against these demands. (Albro v. Robinson, 93 Ky. 200; Fidelity Co. v. Ten Broeck, 88 Ky., 242.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

Z. M. Sherley, the father of Louis A. Sherley, who was the father of appellants, Brannin C. Sherley and Bettie Sherley Ewing, on the 12th day of May, 1869, bought of Mrs. Sarah F. Wingate, a small tract of land of fourteen acres, lying some three miles from Louisville on the Shelbyville pike,

and on which was a commodious brick dwelling house, at the price of ten thousand dollars, paying one-third of the price cash and executing his notes to her for the deferred payments, and taking a deed of conveyance, with general warranty of title to himself for the land. ·

He retained this legal title in himself, until his death, about March, 1879, and by his will, duly executed a short time before his death, gave it, as a part of his estate, to be equally divided between his three sons, Thomas Sherley, John Sherley and Douglass Sherley. These parties held this property until 1886, when by deed of partition of the estate of their father, this tract of land was conveyed to Thomas Sherley, or possibly to his wife and children (the deed not being in the record), who is now in possession, claiming title to same.

On the fifth day of September, 1886, Brannin Sherley and Bettie Sherley, children and only heirs at law of Louis A. Sherley, deceased, filed this bill in chancery, in the Jefferson Circuit Court, claiming an interest in the property, and relying on two grounds for recovery. First, they say that their father, Louis A. Sherley, paid the purchase money, being $10,000, for the property, and that, therefore, it was held in trust for their father and for them.

Secondly, reaffirming the payment of the purchase money by their father, say that it was held in trust by Z. M. Sherley for their father, and that this trust was evidenced by writing, signed by Z. M. Sherley, which writing, going into the hands of Z. M. Sherley, who qualified as the administrator of their father, and afterwards as their guardian, has been destroyed, lost or mislaid.

By an amended petition filed later, they say that by agreement between their father, Louis Sherley, and Z. M. Sherley, the latter undertook and agreed to buy this

property for their father, Louis A. Sherley, and that he did so buy it for him; and that his holding the legal title up to the time of his death was in trust for their father, and for them after their father's death, and that the defendants, as devisees of Z. M. Sherley, held it in the same way until in 1886, when by deeds of partition this place fell to Thomas Sherley. They pray for a judgment against the executor of Z. M. Sherley and his devisees for the sum of ten thousand dollars and interest, or for the recovery of the tract of land aforesaid. These allegations were each and all specifically denied.

Under the issues formed, it is quite clear from the evidence in the cause that Louis A. Sherley did not pay any part of the purchase money for this land, but that same was paid in full by Z. M. Sherley, out of his own funds. Neither is it established that at any time there was ever any writing signed by Z. M. Sherley in any way or manner, declaring or recognizing this trust in favor of his son, Louis A. Sherley, the evidence offered by the appellants being wholly insufficient for that purpose, or even to raise any reasonable presumption that any such writing ever existed. These two allegations relied upon to show title in the ancestor of appellants being out of the way, it remains only to examine the third ground relied on by appellants, and its validity under the law; and whether, if established by parol only, it is sufficient to entitle appellants to recover either the ten thousand dollars claimed, or the land itself.

Plaintiffs establish, as we think, beyond any doubt, that at the time, and before, the purchase of this tract of land, Z. M. Sherley was, for prudential reasons, and looking to a less expensive mode of life by Louis A. Sherley and his family, anxious to have them removed from the city of Louisville, where they lived, and locate in the country, and

that he selected and purchased this place as a home for them, and induced them to remove to the same and make it their home, which they did, until June, 1871, when the wife of Louis A. Sherley died, Louis A. Sherley retaining possession, however, after that time until his own death, on December 25, 1872.

Z. M. Sherley often declared his purpose to do as above stated. So stated to Mrs. Wingate at the time he bought the property and the reason for same. That he always spoke of it during Louis Sherley's life as his home. Said he intended to give it to him, said he had given it to him, and after his son's death said that it was his son's, but that he had never conveyed it to him, but now that he was dead he intended to convey it to his children, Brannin and Bettie Sherley. That for the year 1873 he rented this property out by parol agreement, stating that it belonged to the children of his son, Louis Sherley.

So that the legal question presented by these facts is whether an enforceable trust can be established by parol only, so as to compel a father or grandfather, who has bought and paid for a tract of land, and taken a deed in his own name, to execute a conveyance of the title, in pursuance of such parol declaration, or whether the court, after his death, can, on this state of fact, compel the devisees of the deceased grandfather to make compensation to these appellants equal to the value of this property, the grandfather having, as seen before, retained this property, and the deed for same, until his death in 1879, and by his will given it to his surviving sons.

On consideration we do not believe such a trust on the facts in this case can be enforced in Kentucky.

While there are many states of case that have arisen wherein this court has declared and enforced a parol trust

in real estate, yet no case has been found coming up to the facts in this case where such a ruling has been made.

There are many cases cited by appellant's counsel where the property of some previous owner was about to be sold, either under execution sale or by a commissioner, under a decree of a court, where the owner may contract and has contracted either with his debtor or with some other person (a stranger), to buy this property for him and to take and hold it until the owner can repay him his money and interest, and where under such a contract, though only in parol, the property is sold and bought and an absolute deed made by the sheriff or by the commissioner, and where possession may accompany the title. And yet the court will recognize and enforce the trust, and will declare the purchaser and all holding under him with notice to be holding only in trust. And on the repayment of the purchase money and interest, will compel a reconveyance of the land to the original owner. The courts hold that such a transaction is not within the letter or spirit of the statute of frauds, which is generally relied upon by the holders to avoid the trust. This class of cases constitutes the bulk of the cases cited by appellants, yet there are other cases cited where the doctrine has been applied.

In Faris v. Dunn, 7 Bush, 276, a married woman relinquished dower in a five hundred acre tract of land, upon condition only that her unmarried daughter should have one hundred acres of the land, or its value, $10,000. The husband sold the land to his son-in-law, and, subsequently, bought with the money for his daughter a hundred acre tract of land selected by her, but took the deed to himself, and some years afterwards mortgaged this land to another, who had notice of the agreement. Held by the court that this land was held in trust and the title of the daughter es-

tablished against the mortgagee. Here there was a valuable consideration passing to the husband and father and invested in this land—widely different from the case at bar.

In the case of Caldwell v. Caldwell, 7 Bush, 515, a father, having provided for his children, yet devised to five of them a tract of land of three hundred acres, upon an oral declaration only, that if his other son, James, returned from the war, and was capable of holding title to this land, that they should convey it to him. This trust was enforced by the court. A valuable consideration or property had passed from the father to the devisees.

In the case of Hobbs v. Wilcox, manuscript opinion, October 17, 1881, substantially the same line is followed.

The case of Williams v. Williams, 8 Bush, 241, is relied upon by appellants. In that case the same state of case existed as in many others cited.

Williams, Jr., owned a valuable tract of land adjoining the city limits of Louisville, and having both family and financial troubles, this land in different parcels was sold, some by execution and some by commissioner's sale, and either bought directly by Williams, Sr., or the bids of others taken up by him, all under a parol agreement, as found by the court, to hold for the benefit of Williams, Jr., until his money and interest was repaid. The land was worth fifteen to twenty thousand dollars; the whole advances made in the way indicated by Williams, Sr., did not exceed some ten thousand dollars. The court enforced the trust. But there is no similarity between that case and this one.

On the other hand a number of cases are cited where the court says the trust can not be enforced.

In the case of Usher's Ex. v. Flood, 83 Ky., 552, where Usher not being of any blood relationship to Flood, yet

taking a fancy to him, treated-him as a child, and told him if he would get married he would give him a lot and build him a house.    Flood did marry.    Usher built the house, and put him in possession, yet when Usher died his heirs filed suit and recovered the property, the court holding that there was no consideration, either good or valuable, for the promise, and that as a parol gift it could not be sustained against the statute of frauds.

In Speers v. Sewell, 4 Bush, 239, a father having provided for two of his sons by conveyances to them, induced another son to come and live with him, promising him the home place by parol agreement only.  Held not enforceable.  The court said:    "As there was no written memorial of the contract for the conveyance of the homestead land to the appellant John, he could not, by suit, enforce a specific performance."    The statute of frauds barred his recovery.

In Rucker v. Abell, 8 B. M., 566, the court said:   "A verbal gift of land is wholly invalid.    It vests no right in the donee, legal or equitable.    The donor still has the power to consummate the gift or not at his option.    Being voluntary at its commencement, it is no less voluntary at its completion."

In the case of Commonwealth v. Chesapeake & Ohio Ry. Co., 14 Ky. L. R., 602, this court said: "A verbal agreement by the holder of a legal title that another shall be interested in the title, or to buy land from a stranger for the benefit of another, without that other paying the consideration comes directly within the statute of frauds, and creates no enforceable trust.

In Perry on Trusts, vol. 1, sec. 134, the author says:   "A mere parol declaration by one that he is buying land for another is not sufficient to create a trust."

But is is argued by counsel for appellants that only the

4th section of the English Statute of Frauds, prohibiting
any action to enforce any contract for sale of lands, or any
interest in same, unless in writing, has been adopted in Ken-
tucky; and that our statute omits the 7th sec. of said act,
which declared "that all declarations or creations of trust
or confidences in any lands, tenements or hereditaments
shall be manifested and proved by some writing signed by
the party who is by law to declare such trust, or by his last
will in writing, or else they shall be entirely void, and of
non-effect."

It may be noted that our statute being the fourth section
is supplemented by another statutory provision, providing
"that no estate of inheritance, or freehold, or for a lease of
more than one year, in lands, shall be conveyed, unless by
deed or will." (Ky. Stats., sec. 490.)

So that, whether our legislature in adopting the fourth
section thought it all sufficient, where supplemented by this
other section of our statute quoted, to prohibit every species
and character of trust, not only of parol contract for the
sale of lands, but all voluntary parol declarations of trusts
in lands, certain it is, that under these statutes the courts
in this State have never sanctioned or enforced these volun-
tary parol declaration of trusts made by the owner of the
legal title to any one, whether a child or a stranger.

We conclude that appellants can not recover on this
claim in their petition, however meritorious it may be. The
testator, Z. M. Sherley, having by his last will and testament
devised this land to others, it is not for the court to ques-
tion his right so to do, however unnatural his conduct may
appear in omitting his grandchildren from an equal partici-
pation in his large estate.

To hold that this trust might be enforced on the facts
of this case would be a radical departure from the uniform

course of decisions in this State to this time, and would, we think, establish a most dangerous precedent.

The chancellor below was quite correct in disallowing this claim.

The other matters of importance complained of by appellants refer chiefly to the settlements made by Z. M. Sherley as administrator of his son, Louis A. Sherley, and as guardian of his grandchildren.

And of these items the first to be noticed is as to the extent and value of the interest of Louis A. Sherley in the firm of Sherley, Woolfolk & Co. of which he was a member at the time of his death. This interest was roughly estimated by Edwin H. Bowen (who was himself interested in this firm) at fourteen thousand dollars. This estimate, however, was clearly intended to include one-half interest in the total stock of merchandise and all other assets of this firm, consisting largely of outstanding debts due the firm, accumulated and left over, as the result of a large business continued for a number of years—a business wherein it appears that by the usual course of trade extensive credits had been given—and was based, as Bowen and others clearly show, without making any deduction for bad debts. No examination or inquiry being then made into the solvency of the persons owing large amounts on the books of the firm.

As a matter of fact, when an invoice of the goods and merchandise was soon after taken, it amounted to a little less than eighteen thousand dollars, but in the sale and transfer of the interest of Louis A. Sherley, was estimated at that sum.

And it further developed that, though these outstanding assets were estimated by Bowen at ten thousand dollars, over and above the liabilities of the firm, thus making twenty-eight thousand dollars, so that the estimate of the

one-half was fourteen thousand dollars, yet it appears clearly that the outstanding assets due the firm were insufficient in fact to pay the debts of the firm, and that Z. M. Sherley, as administrator of his son, Louis, and R. H. Woolfolk, who owned the other half interest in this firm, had to, and did, each pay into the firm the sum of one thousand seven hundred and sixty dollars and fifty cents to pay off the outstanding indebtedness of this firm of Sherley, Woolfolk & Co. And thus all the testimony shows this estimate of fourteen thousand dollars made by Bowen, as to the value of one-half the total assets of this firm, was but a wild conjecture.

The settlements made by Z. M. Sherley, as administrator of his son, were based on the actual value of this business, as clearly developed in the settlement of same. And assuming that Edwin H. Bowen, at the time of the death of Louis A. Sherley, owned one-fourth of his half interest in this firm (which was conceded by the administrator and the guardian, and which is clearly and abundantly established by the evidence), then the settlement as made by the administrator of his accounts with said estate, embracing a settlement and report of the net amount received by him from this firm, as and for the interest of Louis A. Sherley, was correct, and same is easily understood.

The net amount for which the administrator accounted as an asset received by him from this source was four thousand nine hundred and eighty-nine dollars and fifty cents, and was obtained in this way:

Stock of goods and merchandise on hand, valued and sold to the new firm at .......... $18,000 00

One-half of this ............................ 9,000 00

Of this half Edwin H. Bowen was entitled to and did receive one-fourth .................... 2,250 00

Balance to the credit of Louis A. Sherley .. $6,750 00

But from this amount must be deducted the sum of one thousand seven hundred and sixty dollars and fifty cents, returned by the administrator of Louis A. Sherley to pay his proportion of the unpaid indebtedness of the firm of Sherley, Woolfolk & Co., thus leaving the net amount received by the administrator as the interest of Louis A. Sherley in this firm, the sum of four thousand nine hundred and eighty-nine dollars and fifty cents, and for which he accounted.

The only error apparent in the settlement is that Edwin H. Bowen, as the owner of one-fourth of the one-half interest of Louis A. Sherley in this firm, should have been required to contribute one-fourth of this one thousand seven hundred and sixty dollars and fifty cents to finish paying the debts of the firm, being four hundred and forty dollars and twelve cents.

It is not shown that there was any want of diligence on the part of R. H. Woolfolk in the settlement of the outstanding business of the firm, of which he was the surviving member.   It was his duty to settle up this business, and this evidence shows he did it in good faith, honestly accounting for everything collected by him belonging to this firm. Being interested himself to the extent of one-half, he had every incentive to diligence, and we think he exercised it, and that the estate of Louis A. Sherley suffered no loss on this account.

As to the interest of Edwin H. Bowen in this firm to the extent of one-fourth of the one-half interest of Louis A. Sherley, it comes from so many sources, and is so clearly established by the evidence, that the administrator, though the father of Louis A. Sherley, and the grandfather and guardian of his children, the appellants in this case, and thus deeply interested by every consideration of blood to guard carefully their interest, yet was compelled to, and did,.

recognize this right of Edwin H. Bowen's interest in this firm to that extent.    Under the evidence he was authorized so to do.

While it is true that the name of Edwin H. Bowen did not appear as a member of the firm, and while there was no written declaration of a gift, or written evidence of any agreement between Louis A. Sherley and Edwin H. Bowen to this effect, yet an interest in personalty may be given by parol, and one may undertake to stand seized to the use and benefit of another, as to personal estate by parol.    Neither is the rule that actual possession must accompany the gift of universal application.

We think this case may be fairly laid within the principles of the case of Williamson v. Yager, 91 Ky., 284, and the cases cited in that opinion.

Another claim of appellants is as to two dividends said to have been received by the administrator of Louis Sherley of the Louisville and Evansville Mail Line Co. of two thousand seven hundred and fifty-six dollars each.    This matter is satisfactorily explained by the evidence, it being clearly shown that the administrator did not in fact receive a dollar in money from this source, but that these dividends were only applied in the cancellation of the notes of Louis A. Sherley previously given this company for amounts corresponding with these dividends, and that no money was passed or paid to the administrator.

As to two of the three dividends received by Z. M. Sherley in the life time of his son, Louis A. Sherley, from the Louisville and Jeffersonville Ferry Company of four hundred and fifteen dollars each, they are shown to have been paid into the firm of Sherley, Woolfolk & Co., and that they were duly entered to the credit of Louis A. Sherley.

As to the other dividend of four hundred and fifteen dol-

lars, this item was charged by the court below in its judg-ment, as also the following additional items were charged to the administrator by the court, viz.: The horse and buggy owned by Louis A. Sherley at his death, and previously unaccounted for, four hundred and fifty dollars; also one-half of the debt owing (as appears on the partnership books) by Edwin H. Bowen, to the firm of Sherley, Woolfolk & Co.—debt, one thousand and thirteen dollars and twenty-five cents; one-half, five hundred and six dollars and sixty cents.

And to these items of indebtedness on the part of the administrator as found by the amount below may be added this four hundred and forty dollars and twelve cents that Edwin H. Bowen should have contributed to the payment of the debt of the firm of Sherley, Woolfolk & Co. And as to all these items it may be said, as was said by the court below, that the claim and demand by the estate of Z. M. Sherley for commissions in the settlement of the estate of his son, Louis A. Sherley, and as guardian of his two grand-children, may be set off. No commissions had ever been al-lowed; they had not been waived, but, on the contrary, in the last two settlements as guardian had been expressly re-served.

And, now, when at this great length of time appellants come and seek to surcharge the settlements of the adminis-trator and guardian, we think these commissions allowed and payable by law may be relied upon, in so far as they are reasonable and just, as a set-off to any items established against the administrator or the guardian. And it appears they are quite sufficient to pay off and discharge all addi-tional items of debit established in this case.

Wherefore the judgment is affirmed.